Potter, J.
The only question in this case, in my opinion, is: Whether the judge on the trial gave the true construction to the condition of the bond given by Simon Springsteen to the defendants. If, in view of all the circumstances of the case, the true interpretation of that condition was given, the judgment should be affirmed, otherwise it should be reversed.
In the terms used in that condition, it cannot be literally construed. They require the aid of the acts done, and other acts the doing of which are contemplated,.and this condition of the bond, and the due and proper interpretation of its meaning, present a case in which the courts are permitted to call in the aid of extrinsic circumstances to determine its true meaning. (French v. Carhart. 1 Comst., 102, and cases cited.) If the language of an instrument is susceptible of more than one construction, the intent may be inquired into. This is the established rule at common law, and in contracts relating to an interest in lands it is made so by an express provision of the statute. (1 R. S., 748.)
Let us briefly refer to the surrounding circumstances at the time of the execution of this bond, and at the things contemplated between the parties, and in the light of those circumstances read this bond.
*704 John J. Springsteen died in December, 1858, without issue, but leaving Susan M. H. Springsteen, his wife, and Simon Springsteen, his father, entitled in equal shares to his estate.
The widow, Susan H. M., and Henry H. Samson, the defendants, administered on the estate.
On the 28th of January, 1859, the father and the widow of deceased agreed, by the assistance of two friends, called arbitrators, upon a division of the estate between themselves, and stipulating that all legal claims against the estate should be paid equally by the said Susan and the said Simon, thus intending to hasten the division and save legal expenses. The agreement, subscribed by both these equal inheritors of this estate, after the determining the division which should be made, was in the following language: “It shall be, and hereby is, agreed, however, that all legal claims against said estate shall be paid equally by the heirs, Susan Matilda H. and Simon.” This agreement, while it was but the expression of what the legal equities of these parties would have been without it, was made on the division of the estate between them, in which division Simon took the real estate, and Susan her share from the personal. And, as at that early day, the actual extent of claims against the estate could not be determined, it was proper, when releasing each other’s interests in the property thus divided, to have something in writing to secure each from the other against future liabilities. And as the plaintiff alleges in his complaint, which, nót being denied in the answer, is admitted, “ that afterwards, on or about the 2íth day of March, 1859, in consideration of the division of the proceeds and effects of said estate theretofore made as aforesaid, and in order to carry into effect said division, (m3 fuU/y <m3 amply m,3emmify cm3 save harmless the said administrator and administratrix, and said estate, from and against the payment of the equal one-half of all the debts, dues, demands and claims, then due or to grow due thereafter, from John J. Springsteen, the said bond and mortgage was executed.” -The condition of this bond, made to the administrators of this estate, is to be read in relation to, and in the light of, these circumstances, and is in the following words: *705 “ If the above bounden Simon Springsteen, his heirs, executors or administrators, shall, and do well and truly pay or cause to be paid, unto the above named obligees, their certain attorneys, executors or assigns, the equal half part of any and all lawful debts, dues, demands and claims now due, or to grow due hereafter, from the said John Springsteen, and fully and amply indemnify and save harmless the said administrator and administratrix, and, estate, from and against the payment of the equal one-half part of all such debts, dues, demands and claims, without fraud or delay, then the preceding obligation is to be void, otherwise of force.”
In August, 1860, this administratrix and administrator had a final accounting as administrators upon the said estate before the surrogate of Tioga county, and upon that accounting there was found due to the defendants, as such administrators, from the said estate, the sum of $673.97. This sum included expenses, surrogate’s fees, monument for the deceased, intestate, and commissions upon the estate to the administrators. The debts remaining unpaid from the estate to creditors was $20, and Simon Springsteen had paid of debts, after giving said bond, $175, and had taken an assignment of that demand to himself.
These administrators claim that Simon Springsteen was liable to pay his equal half of this decree of $673.97 against the estate of John J. Springsteen, and the $20, subject to a reduction by one-half of the amount of $175, which he had paid of said debt's.
The judge at the trial found that Simon Springsteen was only bound to pay according to the terms of the condition of • his bond, and that the condition did not cover the expenses of administration. This presents the whole case.
1. There would be no difficulty in holding, that, without this bond, equity and justice demands that the expenses of administration should be equally borne by those who equally divided, received and enjoyed the estate.
2. It is also clear, beyond dispute, that the written agreement of the 28th of January, 1859, which precedes this bond, binds each party to it, to bear equally all legal claims against *706 the estate of John J. Springsteen. It cannot well be disputed that the expenses of administration is a claim against that estate.
3. It is equally clear, in my opinion, that the bond and mortgage in ■ question were given by Simon Springsteen to secure the performance of his part of that agreement of the 28th of January, 1859.
4. It cannot be denied that the condition of this bond is without force, if literally interpreted, and that of necessity it must have a practical and sensible construction in order to give it any force. John J. Springsteen being dead, cannot technically or literally be said now to owe debts, and no debts can hereafter become due against him. What then does such language, in the condition of this bond, mean? It requires, I think, but the commonest and most ordinary understanding to comprehend that it is the estate of John J. Springsteen to which this language refers,' as owing debts, and against which debts may become due; and so understood, the case is free from all doubt.
It is conceded to be a sound rule in the construction of contracts, that where the language is clear,' unequivocal and unambiguous, the contract is to be interpreted by its own language, and courts are not at liberty to look at extrinsic circumstances surrounding the transaction, or elsewhere, for reasons to ascertain its intent; the understanding of the parties must be deemed to be that which their own written agreement declares. (Rodgers v. Kneeland, 10 Wend., 218.) Where a literal performance is impossible or impracticable, or where the language is ambiguous or susceptible of more than one construction, or is vague, or general, or inappropriate to express the true intent, extraneous evidence is admissible to explain, and an antecedent parol agreement may be received to point to the intent of the parties. This was so held in Blossom v. Griffin (13 N. Y., 573; see also 1 Greenl. Ev., § 288); Livingston v. Ten Broeck (16 Johns., 14).
In the case of Decker v. Furniss (14 N. Y. 615), Com-stock, J., in giving the opinion of the court as to the construction of an agreement, upon the point whether it was an *707 executed or an executory contract, says: “ There is no doubt that the phrase which stands at the commencement of the contract, ‘ William H. Brown sells,’ &c., imports in itself an executed sale. But the books furnish abundant evidence that phrases of this kind are used in a very loose sense, and that their literal signification is often overruled by the tenor and purpose of the whole instrument.” In Hasbrook v. Paddock (1 Barb., 637, 638), G-bidley, J., said: “In the interpretation of a contract for the purpose of ascertaining the intention of the parties to it, it is allowable to resort to extrinsic circumstances which surround the transaction, and thus to place ourselves in the situation of the contracting parties whose language we are called upon to construe.” (See also the various cases collected in 2 Cow. & Hill, n. 957, p. 1399.) Adopting these rules as sound law, the obvious and reasonable meaning of the phrase, “ all lawful debts, dues, demands and claims now due, or to grow due hereafter, from said John J. Springsteen,” followed by the agreement to “ fully and amply indemnify and save harmless the said administrators and estate,” and explained by the agreement of the 28th' January, 1859, “ that all legal claims against said estate shall be paid equally by the said heirs,” is, that it was the debts of the estate of John J. Springsteen that was to be paid, and that each of said heirs should pay an equal proportion of such debts.
The result of this view of the law is, that the judge at the circuit erred in his conclusion that the condition of this bond was limited in its meaning to debts actually contracted by the intestate, and then due, or thereafter to become due. To arrive at this conclusion, it became even necessary to hold its meaning to be the debts of the estate of John J. Springsteen, deceased, thus interpolating into the condition in effect, and as a necessity, the words “ estate ” and “ deceased,” in which, I think, he was clearly justified; but having exercised this justifiable power of making it refer to the estate of John J. Springsteen, deceased, how he could limit it so as to include one class of debts against the estate only, and exclude another, is not so clearly seen to be just.
When the court below found it necessary to add words to this condition in order to give it force and effect, which was *708 doubtless correct, it should then have been interpreted for all other just and equitable purposes between the parties as though the words so interpolated had been written in the condition. This was not done, and obvious injustice is the result. For these reasons I am for reversing the judgment, and ordering a new trial, with costs to abide the result.